# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **JAMES GINDIN**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**JEFF GLOVER & ASSOCIATES, INC.**, a Michigan corporation, **JEFF GLOVER**, an individual, **JAD SWEIS**, an individual, **COLBY LOOMIS**, an individual, and **ANTHONY BERTRAND**, an individual,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff James Gindin ("Plaintiff" or "Gindin") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendants Jeff Glover & Associates, Inc. ("JGAI"), Jeff Glover ("Glover"), Jad Sweis ("Sweis"), Colby Loomis ("Loomis"), and Anthony Bertrand ("Bertrand") (collectively "Defendants" or "Glover"): (1) to stop Defendants' practice of placing calls to consumers whose telephone numbers have been registered on the National Do Not Call Registry; (2) to stop their practice of placing calls to consumers who have expressly asked not to be called; and (3) to obtain redress for all persons injured by their conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other

1

matters, upon information and belief, including investigation conducted by his attorneys.

## JURISDICTION & VENUE

1.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, a federal statute. The Court also has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA"). The alleged Classes consist of over 100 persons each, there is minimal diversity, and the claims of the class members when aggregated together exceeds $5 million. Further, none of the exceptions to CAFA applies.

2.      This Court has personal jurisdiction over Defendant Glover & Associates because it solicits significant business in this District, is headquartered and resides in this District, has entered into business contracts in this District, and a significant portion of the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

3.      This Court has personal jurisdiction over Defendants Glover, Sweis, Loomis, and Bertrand because they solicit significant business in this District, they each reside in this District, and a significant portion of the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

2

4.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendants are headquartered and reside in this District and solicit a significant amount of consumer business within this District and because a portion of the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## PARTIES

5.     Plaintiff James Gindin is a natural person and resident of Brighton, Livingston County, Michigan.

6.     Defendant Jeff Glover & Associates, Inc. is a Michigan corporation incorporated and existing under the laws of the State of Michigan whose primary place of business and corporate headquarters is located at 459 South Main Street, Plymouth, Michigan 48170.

7.     Defendant Jeff Glover is a natural person and resident of the State of Michigan.

8.     Defendant Jad Sweis is a natural person and resident of the State of Michigan.

9.     Defendant Colby Loomis is a natural person and resident of the State of Michigan.

10.     Defendant Anthony Bertrand is a natural person and resident of the State of Michigan.

3

## COMMON FACTUAL ALLEGATIONS

11.     Defendant JGAI is a real estate agency that contracts with individuals to assist them in buying and selling properties. The calls at issue in this case were made on behalf of, for the benefit of, and with the knowledge and approval of JGAI.

12.     Defendant Jeff Glover is a real estate sales agent employed by or associated with Defendant JGAI. Glover made and oversaw the making of the calls at issue in this case and was responsible for the calling policies and programs used by agents of JGAI.

13.     Defendant Jad Sweis is a real estate sales agent employed by or associated with Defendant JGAI.

14.     Defendant Colby Loomis is a real estate sales agent employed by or associated with Defendant JGAI.

15.     Defendant Anthony Bertrand is a real estate sales agent employed by or associated with Defendant JGAI.

16.     Unfortunately for consumers, Defendants, in an attempt to secure new listings and home sales (and commissions) for JGAI, engage in aggressive telemarketing—often stepping outside the law in the process. That is, Defendants research consumers who may be interesting in listing their homes for sale or

4

changing their current broker. [1] Once located, Defendants bombard the consumer with repeated unsolicited telephone calls—even if the consumers phone numbers have been placed on the National Do Not Call Registry. Further, despite consumers' repeated attempts to opt-out of future calls, Defendants continue to call them, even more than thirty (30) days after receiving the requests not to be called—a plain violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*

17.    Notably, Telemarketers who wish to avoid calling numbers listed on the National Do Not Call Registry can easily and inexpensively do so by "scrubbing" their call lists against the National Do Not Call Registry database. The scrubbing process identifies those numbers on the National Do Not Call Registry, allowing telemarketers to remove those numbers and ensure that no calls are placed to consumers who opt-out of telemarketing calls.

18.    To avoid violating the TCPA by calling registered numbers, telemarketers must scrub their call lists against the National Do Not Call Registry at least once every thirty-one days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

19.    Rather than adhere to the requisite rules, Defendants place multiple calls to consumers who have never provided consent (either orally or in writing) to

---

[1] *See Cold Calling Tips That Pay Big*, https://blog.kw.com/2015/03/18/cold-calling-tips-pay-big/ (Mar. 18, 2015); *see also How to Build a Big Business Around Telephone Prospecting*, https://blog.kw.com/2014/09/18/how-to-build-a-big-business-around-telephone-prospecting/ (Sept. 18, 2014).

receive such calls.

20.     What's worse, despite repeated attempts to request for Defendants to stop calling, Defendants simply ignore such requests and continue to place calls more than thirty days after the request, which also violates the TCPA, 47 U.S.C. § 227, *et seq.* Defendants ignore the National Do Not Call Registry and make repeated calls to consumers who, like Plaintiff, have no "established business relationship" with Defendants and who are registered on the National Do Not Call Registry.

21.     On information and belief, Defendants fail maintain a written policy for maintaining an internal Do Not Call list that is available on demand and fail to train their personnel in telemarketing in the existence and use of any such policy or list.

22.     By making unauthorized telemarketing calls as alleged herein, Defendants have caused consumers actual harm. This includes the aggravation, nuisance and invasions of privacy that result from the placement of such calls, in addition to the wear and tear on their telephones, consumption of battery life, lost ability to place outgoing calls, cellular minutes for calls to cellphone owners, loss of value realized for the monies consumers paid to their carriers for the receipt of such calls, and the diminished use, enjoyment, value, and utility of their telephone plans. Furthermore, Defendants made the calls knowing they trespassed against

and interfered with Plaintiff and the other Class members' use and enjoyment of, and the ability to access, their phones, including the related data, software, applications, and hardware components.

23. Defendants knowingly made, and continue to make, repeated telemarketing calls without the prior express consent of the recipients whose numbers were listed on the Do Not Call list and more than thirty (30) days after the recipient asked for the calls to stop. As such, Defendants not only invaded the personal privacy of Plaintiff and members of the putative Classes, they also intentionally and repeatedly violated the TCPA.

24. Defendants are all associated with Defendant JGAI and the calls were made on JGAI's behalf and with its knowledge and approval. Defendants knew about the calls, received the benefits of the calls, directed that the calls be made, and ratified the calls.

25. The TCPA was enacted to protect consumers from unsolicited telephone calls like those alleged in this case. In response to Defendants' unlawful conduct, Plaintiff files the instant lawsuit and seeks an injunction requiring Defendants to cease all unsolicited telephone calling activities to consumers as complained of herein and an award of statutory damages to the members of the Classes, together with costs and reasonable attorneys' fees.

## FACTS SPECIFIC TO PLAINTIFF JAMES GINDIN

26.     Plaintiff Gindin is the owner and customary user of a telephone number ending in 4837.

27.     On January 11, 2007, Plaintiff Gindin registered his telephone number on the National Do Not Call Registry to avoid receiving unsolicited telemarketing calls.

28.     In or around early 2016, Gindin listed his home for sale.

29.     Later, in or around July 2016, Gindin made the decision to retain his home and remove all sale listings.

30.     Shortly thereafter, Plaintiff began receiving non-stop telemarketing calls from the Defendants soliciting Plaintiff to utilize their home listing and other real estate brokerage services.

31.     All of the calls were made by associates of JGAI at the direction and oversight of Glover. The calls all came from JGAI phone numbers as indicated on Plaintiff's Caller ID and all of the callers are associates of JGAI. JGAI and Glover knew about, directed, ratified, and benefitted from the calls.

32.     Plaintiff received telemarketing calls from Defendants from a variety of telephone numbers, including: 734-259-1278, 734-259-1121, 248-633-6947, 248-930-0198, 248-633-6947, and others.

33.     Defendant JGAI is the owner of all telephone numbers utilized to place calls to Plaintiff.

34.     On information and belief, Defendant Sweis is the primary and customer user of the telephone number 734-259-1278. Sweis placed at least three known calls to Plaintiff in a twelve-month period and/or more than thirty (30) days after Plaintiff requested to no longer be called on September 6, 2016.

35.     On information and belief, Defendant Loomis is the primary and customer user of the telephone number 734-259-1121. Loomis placed at least two known calls to Plaintiff in a twelve-month period and/or more than thirty (30) days after Plaintiff requested to no longer be called on September 6, 2016.

36.     On information and belief, Defendant Bertrand is the primary and customer user of the telephone number 248-633-6947. Bertrand placed at least three known calls to Plaintiff in a twelve-month period and/or more than thirty (30) days after Plaintiff requested to no longer be called on September 6, 2016.

37.     After receiving repeated telemarketing calls from Defendants, on or around September 6, 2016, Plaintiff posted a complaint on Defendant JGAI's website requesting that Defendants stop all telemarketing calls to his telephone.

38.     Later that same day, September 6, 2016, Defendant Glover responded and acknowledged Plaintiff's request to no longer be called and further informed Plaintiff that he would remove his name and number from Defendants' calling list.

39.     Nevertheless, and despite repeated requests for the calls to stop and an acknowledgement from Defendant JGAI and Glover that the calls would stop,

Plaintiff continued to receive multiple telemarketing calls from Defendants, including calls more than thirty (30) days after Plaintiff's September 6, 2016 request not to be called.

40.     Plaintiff received over twenty-five calls from or on behalf of JGAI that were placed, in part, by the individual Defendants more than 30 days after Plaintiff's September 6, 2016 request to be placed on Defendants' internal do not call list.

41.     On or around August 2017, after having listed his home for sale again, Plaintiff removed the listing for a second time.

42.     Shortly thereafter, Plaintiff was, again, flooded with calls from the Defendants attempting solicit Plaintiff to utilize their home listing and other real estate brokerage services.

43.     Then, on or around May 2018, having listed his home for sale a third time, Plaintiff made the decision to change real estate agents and briefly removed his listing.

44.     Unsurprisingly, Defendants continued to bombard Plaintiff with calls attempting to again utilize their home listing and other real estate brokerage services.

45.     Plaintiff does not have a relationship with Defendants, has never provided his telephone number directly to Defendants, and has never requested that

Defendants place calls to him or to offer him their services. Simply put, Plaintiff has never provided any form of prior express consent to Defendants to place telemarketing calls to him and has no business relationship with Defendants.

46.     Defendants were, and are, aware that the above-described telemarketing calls were made to consumers like Plaintiff who have not consented to receive them.

47.     Moreover, Defendants deliberately and intentionally refuse to honor requests by consumers to place their numbers on Defendants' do not call list, to the extent it maintains any such list or has a policy regarding the maintenance of any such list.

48.     By making unsolicited calls as alleged herein, Defendants have caused Plaintiff and members of the Classes actual harm. This includes the aggravation, nuisance, and invasions of privacy that result from the placement of such calls, in addition to the wear and tear on their telephones, interference with the use of their phones, consumption of battery life, loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls, and the diminished use, enjoyment, value, and utility of their telephone plans. Furthermore, Defendants made the calls knowing they trespassed against and interfered with Plaintiff and the other Class members' use and enjoyment of, and the ability to access, their phones, including the related data, software, and hardware

components.

49.     To redress these injuries, Plaintiff, on behalf of himself and the Classes of similarly situated individuals, brings this suit under the TCPA, which prohibits unsolicited telemarketing calls to cellular telephones. On behalf of the Classes, Plaintiff seek an injunction requiring Defendants to cease all unauthorized calling activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

50.     Plaintiff brings this action in accordance with Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and two Classes defined as follows:

**DNC Registry Class:** All persons in the United States who (1) from the date four years prior to the filing of this Complaint through the date notice is sent to the Class; (2) Defendants caused to be called; (3) on the person's telephone; (4) more than one time during any 12-month period; (5) where the person's telephone number had been listed on the National Do No Call Registry for at least thirty days at the time of the calls; (6) for the same purpose as Defendants called Plaintiff; and (7) for whom Defendants claim they obtained consent in the same manner as Defendants claim they obtained consent to call the Plaintiff.

**DNC Stop Class:** All persons in the United States who (1) from the date four years prior to the filing of this Complaint through the date notice is sent to the Class; (2) Defendants caused to be called; (3) on the person's telephone; (4) where the person's telephone number had been listed on the National Do No Call Registry for at least thirty days; (5) for the same purpose as Defendants called Plaintiff; (6) who requested that Defendants not call them again; and (7) who received at

least one additional call from Defendants at least thirty days after requesting not to be called again.

51.     The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assignees of any such excluded persons. Plaintiff anticipates the need to amend the class definitions following a period of appropriate discovery.

52.     **Numerosity:** The exact number of members within the Classes is unknown and not available to Plaintiff at this time, but individual joinder is impracticable. On information and belief, Defendants have placed telemarketing calls to thousands of consumers who fall into the defined Classes. However, the exact number of members of the Classes can only be identified through Defendants' records, including the Defendants' phone records.

53.     **Typicality:** Plaintiff's claims are typical of the claims of other members of the Classes in that Plaintiff and the members of the Classes sustained

damages arising out of Defendants' uniform wrongful conduct.

54.    **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions, including cases under the TCPA. Plaintiff has no interest antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiff.

55.    **Commonality and Predominance:** There are questions of law and fact common to the claims of Plaintiff and the Classes, and those questions will drive the litigation and predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)    Whether Defendants' conduct violated the TCPA;

(b)    Whether Defendants made multiple telemarketing calls to consumers whose telephone numbers were registered on the National Do Not Call Registry within the same 12-month period;

(c)    Whether Defendants systematically made telephone calls to consumers more than thirty (30) days after they explicitly asked not to be called by Defendants;

(d)     Whether Defendants maintained a written policy regarding the maintenance of any internal Do Not Call List and whether Defendants maintained any such list;

(e)     Whether Defendants trained personnel involved in telemarketing in the existence and use of their Do Not Call policy and list; and

(f)     Whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

56.     **Conduct Similar Towards All Class Members:** By committing the acts set forth in this pleading, Defendants have acted or refused to act on grounds substantially similar towards all members of the Classes so as to render certification of the Classes for final injunctive relief and corresponding declaratory relief appropriate under Rule 23(b)(2).

57.     **Superiority & Manageability:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the

Classes to obtain effective relief from Defendants' misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured. Also, there are no pending governmental actions against Defendants for the same conduct.

<u>**FIRST CAUSE OF ACTION**</u>
**Violation of 47 U.S.C. § 227,** *et seq.*
**(On behalf of Plaintiff and the DNC Registry Class)**

58.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

59.     47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

60.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

61.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entilies making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date

such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made."

62.     Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the DNC Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry. These consumers requested to not receive calls from Defendants as set forth in 47 C.F.R. § 64.1200(d)(3).

63.     Defendants each made more than one unsolicited telephone call to Plaintiff within a 12-month period without Plaintiff's prior express written consent to receive such calls. Defendant also made more than one unsolicited telephone

call to each member of the Class within a 12-month period without their prior express consent to receive such calls. Plaintiff and members of the DNC Registry Class never provided any form of consent to receive telephone calls from Defendants, oral or written, and/or Defendants do not have a current record of consent to place telemarketing calls to them.

64.     Defendants violated 47 U.S.C. § 227(c)(5) by placing more than one call to Plaintiff and the Class in a 12-month period despite the fact Plaintiff and the Class members' telephone numbers were registered on the national Do Not Call list for more than 30 days.

65.     Defendants also violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential telephone subscribers, such as Plaintiff and the DNC Registry Class, without instituting procedures that comply with minimal regulatory standards, including having a written policy for maintaining a list of persons who request not to receive telemarketing calls from them, and by not informing and training their personnel engaged in telemarketing in the existence and use of any such do-not-call policy or list.

66.     As a result of Defendants' unlawful conduct, Plaintiff and the Class suffered actual damages and, under section 47 U.S.C. § 227(c)(5), Plaintiff and each member of the DNC Registry Class are each entitled to receive up to $500 in damages for each violation of 47 C.F.R. § 64.1200.

67.     Should the Court determine that Defendants' conduct was willful and knowing, the Court may, pursuant to Section 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff and the other members of the DNC Registry Class.

## SECOND CAUSE OF ACTION
### Violation of 47 U.S.C. § 227, *et seq.*
### (On behalf of Plaintiff and the DNC Stop Class)

68.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

69.     Plaintiff and other members of the DNC Stop Class expressly requested that Defendants no longer placed calls to them, after which Defendants failed to place Plaintiff and other members of the DNC Stop Class on its internal do not call list (or failed to do so within a reasonable time period).

70.     More than thirty days following Plaintiff and the other members of the DNC Stop Class express stop requests to cease their receipt of future calls from Defendants, Defendants placed additional calls to Plaintiff and the class members without their consent and contrary to their prior requests not to be called.

71.     Thus, Defendants violated 47 C.F.R. § 64.1200 by initiating calls for telemarketing purposes to telephone subscribers such as Plaintiff and the DNC Stop Class who were registered on the national do not call registry and who specifically told Defendants to stop calling them, and who received more calls

within a 12-month period from Defendants after informing Defendants to stop calling them.

72.     Defendants made these calls without instituting procedures that comply with minimal regulatory standards, including having a written policy for maintaining a list of persons who request not to receive telemarketing calls from them, and by not informing and training their personnel engaged in telemarketing in the existence and use of any such do-not-call policy or list.

73.     As a result of Defendants' unlawful conduct, Plaintiff and the Class suffered actual damages and, under section 47 U.S.C. § 227(c)(5), Plaintiff and each member of the DNC Stop Class are each entitled to receive up to $500 in damages for each violation of 47 C.F.R. § 64.1200.

74.     In the event the Court determines that Defendants' conduct was willful and knowing, the Court may, pursuant to Section 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff and the other members of the DNC Stop Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff James Gindin, on behalf of himself and the Classes, prays for the following relief:

A.     An order certifying the Classes as defined above, appointing Plaintiff as the representative of the Classes, and appointing his counsel as

Class Counsel;

B.    An order declaring that Defendants' actions, as set out above, violate the TCPA;

C.    An injunction prohibiting Defendants from conducting any future telemarketing activities until they have established a written policy for maintaining an internal Do Not Call List, and train their personnel in the existence and use of such a policy and list as required by the TCPA;

D.    An injunction requiring Defendants to cease all unsolicited telemarketing calls to individuals registered on the National Do Not Call Registry;

E.    An injunction requiring Defendants to cease all telemarketing calls to individuals who have requested to no longer receive calls more than thirty (30) days after the request is received;

F.    An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

G.    An award of trebled damages if willfulness is shown;

H.    An award of reasonable attorneys' fees and costs to be paid out of the

common fund prayed for above; and

I.      Such other and further relief that the Court deems reasonable and just.

## **JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: October 16, 2018

**JAMES GINDIN**, individually and on behalf of all others similarly situated,

By: /s/ Bradley J. Friedman
One of Plaintiffs' Attorneys

Bradley J. Friedman
bfriedmanesq@gmail.com
Law Offices of Bradley J. Friedman
30300 Northwestern Hwy, Suite 101
Farmington Hills, Michigan 48334
Tel: 248-932-0100
Fax: 248-932-3512

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso
ppeluso@woodrowpeluso.com
Taylor T. Smith
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Counsel for Plaintiff and the Putative Classes*